Clare M. CARTER

v.

**MAINE EMPLOYMENT SECURITY COM-
MISSION and Emilien A. Levesque.**

Supreme Judicial Court of Maine.

May 7, 1976.

Sunenblick & Fontaine, by Donald F. Fontaine, Augusta, for plaintiff.

Peter B. Dublin, Donald J. Gasink, Asst. Attys. Gen., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK and ARCHIBALD, JJ.

POMEROY, Justice.

Appellee, Clare Carter, left her employment in a poultry plant in Belfast, Maine, in August 1972. Her stated purpose was to join her husband who had moved to Presque Isle and was there employed. Concerning the motive for leaving her employment in Belfast, there is no issue in contest. The sole motive for her leaving Belfast was her desire to be with her husband.

Being unable to find work in Presque Isle, she filed a claim for unemployment compensation. Her claim was denied first

by a deputy of the Maine Employment Security Commission, next by an appeal tribunal, and ultimately by the Commission itself. Each denial was premised on the conclusion that denial was mandated by 26 M.R.S.A. § 1193(1).[1]

On appeal to the Superior Court (Rule 80B, M.R.Civ.P., being the vehicle for such appeal), a Justice of the Superior Court ruled that

> ". . . a liberal construction of the unemployment statute requires the Court to conclude that the Plaintiff left her job involuntarily in order to hold her family together and that therefore the legislation intended that she receive unemployment benefits."

An appeal by the Commission from such judgment resulted.

We sustain the appeal.

■ As we have noted above, 26 M.R.S.A. § 1193(1) disqualifies for unemployment compensation benefits those persons who leave their employment "voluntarily without good cause *attributable to such employment.*" (Emphasis supplied). In this case, Mrs. Carter's decision to quit her job in Belfast and join her husband in Presque Isle was clearly not for a reason "attributable to such employment."

As we said in *Toothaker v. Maine Employment Security Commission,* Me., 217 A.2d 203 (1966);

> "'Attributable to such employment' plainly limits the breadth of 'good cause.' . . .

> "The good personal cause for quitting employment in our opinion must be di-

rectly attributable to the employment. [citations omitted]

> \*    \*    \*    \*    \*    \*

"It is not sufficient that the cause be indirectly connected with the employment." 217 A.2d at 209.

■ An examination of the history of the "attributable to such employment" phrase reveals that it was added to the "voluntarily without good cause" disqualification provision in 1955.[2] As was indicated in *Toothaker,* the phrase, as clearly written, disqualifies those claimants whose departure from work is not directly related to that work, notwithstanding the fact that such departure was involuntary and for good cause.

In the instant case we have no doubt that Mrs. Carter's motivation for leaving her job, i. e., to be with her husband, was laudable. However, it was not a reason "attributable to such [her] employment" within the meaning of 26 M.R.S.A. § 1193(1). That being so, Mrs. Carter was properly denied unemployment compensation benefits.

Appellee maintains, however, that she is among a special class of claimants, i. e., married women, who have been singled out by the legislature for special treatment—treatment which entitles her to unemployment benefits notwithstanding her failure to demonstrate that her departure from her job was work-related.

Appellee's argument is premised on the fact that until 1972 there existed a provision in 26 M.R.S.A. § 1193(1) which specifically disqualified

> ". . . a female claimant who has voluntarily left work to marry, or to per-

---

1. "An individual shall be disqualified for benefits:

"1. Voluntarily leaves work.

"A. For the week in which he left his regular employment voluntarily without good cause attributable to such employment, or to a claimant who has voluntarily removed himself from the labor market where presently employed to an area where employment opportunity is less frequent, if so found by the commission, and disqualification shall continue for 12 weeks immediately following such week or until claimant has earned 8 times his weekly benefit amount, whichever occurs first. . . ."

2. Public Laws of Maine, 1955, c. 376, § 1.

form the customary duties of a housewife, or to leave the locale to live with her husband . . . ."

This disqualification was without regard to whether the claimant's leaving was without good cause attributable to such employment.

Effective January 1, 1972, the language regarding female claimants was stricken from 26 M.R.S.A. § 1193(1).

Appellee urges that the deletion is indicative of the legislature's intent that wives should no longer be disqualified from receiving unemployment compensation when they leave their employment for one of the reasons recited in the former law, i. e., to marry, to perform the customary duties of a housewife, or to leave the locale to live with their husbands.

Having carefully examined the legislative history surrounding the deletion of the so-called "domestic leaving" clause (as the appellee's brief describes it) from 26 M.R.S.A. § 1193(1), we reject appellee's contention.

The deletion was originally proposed on February 3, 1971, as L.D. 555. According to the bill's statement of fact, its purpose was

"to eliminate a special disqualification for women which does not apply to men. The remaining language of the law provides sufficient remedy for proper disposition of these issues."

L.D. 555 was reported out of the Committee on Labor "ought not to pass" pursuant to Rule 17–A (1971 Legis.Record, p. 2183). However, the text of the bill was incorporated in its entirety into L.D. 1858 which was enacted as chapter 538 of the Public Laws of Maine, 1971, entitled "An Act to

Amend the Employment Security Law to Conform to Federal Requirements." [3]

At the same time, the legislature rejected a bill (L.D. 792) which would have specifically allowed benefits to women who satisfied other requirements of the statute and who left work in order to be with their husbands. (1971 Legis.Record, pp. 2225, 2386). The bill proposed to delete from 26 M.R.S.A. § 1193(1) the phrases "attributable to such employment" and "or leave the locale to live with her husband." The stated purpose of the bill was

"to prevent the denial of benefits to persons who are out of work thru [sic] no fault of their own, such as loss of transportation and the preservation of marital status."

■ As we interpret the legislative history surrounding the 1971 amendment to 26 M.R.S.A. § 1193(1), the amendment was not intended to create, by indirect means, a special exception (from the requirement that a claimant's leaving be attributable to his employment) for the benefit of married women who leave their jobs for domestic reasons. A bill which would have directly effectuated such a purpose was specifically rejected by the legislature. It is evident to us from the statement of fact appended to L.D. 555 and from the title of the act of which the text of L.D. 555 eventually became part, that the deletion of the "domestic leaving" clause from the disqualification statute was intended simply to eliminate unnecessary,[4] possibly discriminatory language from the statute.

We conclude that 26 M.R.S.A. § 1193(1) means precisely what it says, i. e., that *any* claimant who leaves his or her employment "voluntarily without good cause attributable to such employment" is rendered ineli-

---

3. The deletion of the "domestic leaving" language is found in § 28 of chapter 538.

4. The "domestic leaving" clause was added to 26 M.R.S.A. § 1193 in 1955. The purpose of the addition is not at all clear since a

female claimant who left her job for domestic reasons would presumably be ineligible for benefits, even absent the "domestic leaving" clause, by reason of the "attributable to employment" requirement.

gible to receive unemployment benefits for the period of time prescribed by the statute. It follows, therefore, that the employment commission's determination that appellee is not eligible for unemployment benefits was proper and must be reinstated.[5]

The entry must be:

Appeal sustained.

All Justices concurring.

DELAHANTY, J., sat at argument but did not participate further in the case.

---

5. We need not and do not determine whether, in the circumstances of this case, the claim-

ant's leaving her job was voluntary or involuntary.