486 So.2d 632 (1986)
DEPARTMENT OF the AIR FORCE, Appellant,
v.
State of Florida, Unemployment Appeals Commission and Hattie Roberts, Appellees.
No. BE-373.
District Court of Appeal of Florida, First District.
March 27, 1986.
*633 Thomas P. Keenan, Jr., Col., U.S.A.F., Jay L. Cohen, Major, U.S.A.F., Michael C. Daniel, Captain, U.S.A.F., and Karl A. Kaszuba, Captain, U.S.A.F., Sp. Assts. to U.S. Atty. for the Northern Dist. of Florida, Eglin A.F.B., for appellant.
Geri Atkinson-Hazelton, Gen. Counsel, and Judy L. Harrelson, Tallahassee, for appellee State of Fla., Unemployment Appeals Com'n.
No appearance for appellee Hattie Roberts.
NIMMONS, Judge.
The Department of the Air Force appeals from a final order of the Florida Unemployment Appeals Commission affirming a decision of the appeals referee who awarded benefits to appellee, Hattie Roberts. We reverse.
The facts in this case are not in dispute. Roberts was a child care attendant at the Eglin Air Force Base Child Care Center. As such, she was employed as a nonappropriated fund civilian employee[1] for the period between April 22, 1982 and December 14, 1983, at which time she resigned giving as her sole reason her intention to accompany her husband to his new base. Her husband, on active military duty with the Air Force, had received orders reassigning him from Eglin to Hawaii.
Roberts applied for unemployment compensation benefits subsequent to her move to Hawaii. At the initial administrative stage, the claims examiner determined that Roberts was eligible for benefits. The appeals referee affirmed the claims examiner's decision, stating in pertinent part:
The record will reflect that while the funds supporting the child care center were classified as nonappropriated funds the ultimate responsibility for the child care center is the Base Commander. It would then be concluded that the claimant and her husband are both employed by the United States Air Force. Since this employer was responsible for transferring her husband it can only be concluded that the claimant voluntarily left her employment but did so with good cause attributable to her employer.
The Unemployment Appeals Commission affirmed without opinion the referee's decision.
*634 Appellant contends: (1) that the Commission erred in finding that Roberts and her husband were employed by the same employer; (2) that even assuming both were employed by the same employer, Mrs. Roberts' resignation to follow her husband to his next duty station, although perhaps a good cause for her resignation, is a cause personal to her and not a "cause attributable to [her] employer" within the meaning of Section 443.101, Florida Statutes (1983); and (3) that the commission's decision, as applied, contravenes the Supremacy Clause, Article VI, Section 2, of the United States Constitution. We agree with the appellant on point two above and reverse on that basis. We, therefore, find it unnecessary to decide whether the commission's decision runs afoul of the Supremacy Clause and whether the commission erred in finding that Mrs. Roberts and her husband were, in fact, employed by the same employer. Our opinion will therefore assume, without deciding, that husband and wife worked for the same employer.
The precise question presented concerning the proper construction of the subject statute has apparently never been decided by a Florida court. However, at least two decisions are instructive.
In Slusher v. State of Florida, Department of Commerce, 354 So.2d 450 (Fla. 1st DCA 1978), the claimant, a Lakeland school teacher, sought unemployment compensation benefits after quitting her employment to relocate with her husband in Virginia where he had secured employment. This court, in affirming the administrative denial of benefits, although recognizing that the claimant's reason for terminating her employment was a good personal reason in that it would keep the family together, held that it could not be considered "attributable to the employer."
In Beard v. State of Florida, Department of Commerce, 369 So.2d 382 (Fla. 2nd DCA 1979), the claimant was a correctional officer who was informed on a Friday morning by her employer that she was being transferred from the courthouse bailiff's office to the county jail effective the following Monday and that her new hours would be 11:45 P.M. until 7:45 A.M. The claimant requested annual leave in order to arrange for nighttime supervision for her two teenage children. Claimant's personnel administrator denied the request as he felt that any vacation should be approved by the supervisor at the jail. After being so informed, the claimant resigned effective immediately. The Unemployment Compensation Board of Review, finding that the employer's refusal to grant claimant vacation time left her no reasonable alternative but to resign, held that she had "good cause attributable to her employer" for leaving the job. In reversing the Board's ruling, the Second District described some of the pertinent legislative history of Section 443.06(1), the forerunner of Section 443.101(1), Florida Statutes (1983):
Prior to 1963, Section 443.06(1), Florida Statutes (1961), provided that a claimant for unemployment compensation who had voluntarily terminated his or her employment without "good cause" was not eligible for benefits. Under that version of the law, our sister court interpreted good cause to include familial obligations. Williams v. Florida Industrial Commission, 135 So.2d 435 (Fla. 3d DCA 1961). See also Yordamlis v. Florida Industrial Commission, 158 So.2d 791 (Fla. 3d DCA 1963), in which the court interpreted "good cause" for refusing to accept proffered employment to include child care obligations. In 1963, the legislature amended Section 443.06(1) to require the good cause for voluntary termination to be "attributable to the employer." Petitioner argues that such a change narrowed the eligibility for unemployment compensation so as to exclude family obligations as reason for voluntary termination.
Id. at 384. The court went on to discuss cases from other jurisdictions, some with statutory language similar to Florida's. The court noted:
"In cases where such a requirement [referring to qualifying phrases such as *635 `attributable to employer' or `connected with the employment'] exists in the unemployment compensation law, the courts have consistently held that domestic obligations are personal reasons rather than reasons attributable to the employer or to the work. See Carter v. Maine Employment Security Commission, 356 A.2d 731 (Me. 1976); Rogers v. Doyal, 215 So.2d 377 (La. Ct. App. 1968).
Thus we hold that the legislature, when it added the phrase `attributable to the employer' to the good cause requirement for voluntary temination, must have intended to remove domestic obligations as good cause for voluntary termination."
Id. at 385.
We are persuaded by the logic of the reasoning of these cases. Even assuming the claimant and her spouse were employed by the same employer, the claimant's voluntary termination of her employment in order to follow her transferred husband is properly characterized as voluntary termination for reasons personal to the claimant/employee.
Where a claimant, who voluntarily quits, seeks to invoke the subject statute's provisions by relying upon action taken by his employer, we hold that the action, in order to qualify as that which is to be attributed to the employer within the meaning of the statute, must be action directed at the claimant's employment relationship. Generally, an employer's action which, as in the instant case, is directed at another employee's employment relationship will not qualify under the statute as action attributable to the employer, notwithstanding the fact that the employee/claimant may, for good personal reasons, be expected to quit as a result of such action. We recognize that there may be exceptions to this general rule. For example, if it were shown that the claimant's spouse had been transferred for the purpose of getting rid of the claimant, the action of the employer might legitimately be regarded as having been directed at the claimant's employment relationship. There is no such evidence in the record of this case.
REVERSED.
ZEHMER, J., concurs.
BOOTH, C.J., dissents with written opinion.
BOOTH, Chief Justice, dissenting:
I respectfully dissent and would affirm the order of the Florida Unemployment Appeals Commission. This is a case of first impression. The basic rule controls, however, and requires that the court give due deference to agencies in making interpretive determinations which reflect the policy of their enabling statutory powers. Here, the Commission has construed the language "attributable to the employer" liberally and literally in favor of the claimant, and that construction is in accord with the basic purpose of the legislation. The armed forces are uniquely involved and in control of service personnel and their families. Particular burdens and benefits are the result. The responsibility of the involvement should be carried forward in the instant case to allow the unemployment compensation benefits sought.
NOTES
[1] Nonappropriated funds activities use civilian personnel and pay their salaries from locally-generated funds instead of from congressional appropriations. Such employees are hired from the local area and there are no transfers from one military base to another.